IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MICHAEL BECKETT,

          Plaintiff,

vs.                        Case No. 10-1370-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

          Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits.  The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the

1

conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  <u>Graham v. Sullivan</u>, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  <u>Glenn</u>, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

3

jobs existing in significant numbers in the national economy.

Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On September 21, 2009, administrative law judge (ALJ) Robert A. Evans issued his decision (R. at 12-18). Plaintiff alleges that he has been disabled since September 30, 1998 (R. at 12). Plaintiff is insured for disability insurance benefits through September 30, 1998 (R. at 14). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity on September 30, 1998 (R. at 14). At step two, the ALJ found that plaintiff had the following severe impairment: coronary artery

4

disease status post coronary artery bypass grafting (R. at 14).
At step three, the ALJ determined that plaintiff's impairments do
not meet or equal a listed impairment (R. at 14).  After
determining plaintiff's RFC, that plaintiff can perform a full
range of light work (R. at 14), the ALJ determined at step four
that plaintiff could perform past relevant work (R. at 17).
Therefore, the ALJ concluded that plaintiff was not disabled (R.
at 17).

**III.  Are the ALJ's RFC findings supported by substantial evidence?**

According to SSR 96-8p, the RFC assessment "must include a
narrative discussion describing how the evidence supports each
conclusion, citing specific medical facts...and nonmedical
evidence."  The ALJ must explain how any material inconsistencies
or ambiguities in the evidence in the case record were considered
and resolved.  The RFC assessment must always consider and
address medical source opinions.  If the RFC assessment conflicts
with an opinion from a medical source, the ALJ must explain why
the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7.
SSR rulings are binding on an ALJ.  20 C.F.R. § 402.35(b)(1);
Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891
n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118,
1120 (10th Cir. 1993).  When the ALJ fails to provide a narrative
discussion describing how the evidence supports each conclusion,

citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence.  See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003).  The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003).  It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions.  Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995).  When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination.  Such bare conclusions are beyond meaningful judicial review.  Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

The ALJ found that plaintiff had the RFC to perform the full range of light work (R. at 14).  At the hearing, Dr. Felkins testified that plaintiff could perform a full range of light work in the time period from 1996-1998 (R. at 23).  There is no medical opinion evidence indicating that plaintiff cannot perform

light work, or which makes any other findings regarding
plaintiff's RFC.

Plaintiff argues that Dr. Felkins is not qualified to render
an opinion regarding plaintiff's RFC because Dr. Felkins is a
practicing psychiatrist.  Dr. Felkins curriculum vitae (CV)
indicates that Dr. Felkins has an M.D. degree, and is therefore a
physician who is board certified and practices in the field of
psychiatry (R. at 146-147).

A psychiatrist is a physician, and therefore an acceptable
medical source under the regulations.  Any opinion from a
psychiatrist is therefore a medical opinion that the ALJ must
consider.  Fuller v. Astrue, 766 F. Supp.2d 1149, 1161 (D. Kan.
2011).  According to the regulations, a physician can provide
medical opinions regarding a claimant's physical or mental
restrictions.  20 C.F.R. § 404.1527(a)(2).  A physician may give
an opinion regarding a patient's mental state even though not a
psychiatrist; the fact that a physician is not a specialist does
not affect the admissibility of the opinion, but does affect the
weight given to the opinion.  Quinton v. Farmland Industries,
Inc., 928 F.2d 335, 337 (10th Cir. 1991).  Therefore, a
psychiatrist, who is also a physician, may give an opinion
regarding a patient's physical state; the fact that the
psychiatrist is not a specialist regarding plaintiff's physical
impairments does not affect the admissibility of the opinion, but

it may affect the weight given to the opinion.  Although the fact

that Dr. Felkins is a psychiatrist is a factor to be considered

when determining what weight can be accorded to her opinion, as a

medical doctor she is qualified to render a medical opinion

regarding plaintiff's physical impairments and limitations.

     The ALJ adopted the opinion of Dr. Felkins that plaintiff

could perform light work.  The court will not reweigh the

evidence or substitute its judgment for that of the Commissioner.

Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White

v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002).

Although the court will not reweigh the evidence, the conclusions

reached by the ALJ must be reasonable and consistent with the

evidence.  See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir.

1994)(the court must affirm if, considering the evidence as a

whole, there is sufficient evidence which a reasonable mind might

accept as adequate to support a conclusion).  Given the fact that

Dr. Felkins is an acceptable medical source, and in light of the

lack of any other medical evidence regarding plaintiff's RFC, the

court finds that the decision of the ALJ to adopt the opinion of

Dr. Felkins that plaintiff can perform light work is reasonable

and consistent with the evidence.

**IV.  Did the ALJ err in his step four analysis?**

     At step four, the ALJ is required by Social Security Ruling

(SSR) 82-62 to make findings of fact regarding: 1) the

8

individual's residual functional capacity, 2) the physical and
mental demands of prior jobs or occupations, and 3) the ability
of the individual to return to the past occupation given his or
her residual functional capacity.  <u>Henrie v. United States Dep't
of HHS</u>, 13 F.3d 359, 361 (1993).  Thus, at the third or final
phase of the analysis, the ALJ determines whether the claimant
has the ability to meet the job demands found in phase two
despite the mental and/or physical limitations found in phase
one.  At each of these three phases, the ALJ must make specific
findings.  <u>Frantz v. Astrue</u>, 509 F.3d 1299, 1303 (10th Cir.
2007); <u>Winfrey v. Chater</u>, 92 F.3d 1017, 1023 (10th Cir. 1996).

The first question before the court is whether plaintiff has
past relevant work that can be considered at step four.
Plaintiff testified that he was performing disaster relief work
in the 1980s.  He initially worked doing mass care, or the
feeding of people, but moved into training work due to his
physical problems (R. at 37).  He began training in 1983, and
became a training officer in 1988 (R. at 37).  The vocational
expert (VE) testified that plaintiff's work as a disaster
relief/service director (DOT # 187.167-214) is classified as
medium work, and that the work as a training instructor (DOT #
166.227-010) is classified as light work (R. at 38-42).  At the
second hearing, another VE testified that they agreed with the
testimony of the VE at the first hearing that described

plaintiff's work for the Red Cross as light work (R. at 25).

Work experience applies as past relevant work at step four
when it was done within the last 15 years, lasted long enough for
the claimant to do it, and was substantial gainful activity
(SGA).  SSR 82-62, 1982 WL 31386 at *1.  Plaintiff testified that
he began training or transitioning to become a training
instructor in 1983, and became a training instructor in 1988.  He
continued in this job until 1993 (R. at 171, 162).  Plaintiff
thus performed this job within 15 years of the date that he was
last eligible for disability insurance (1998).  His income from
1988-1993 was as follows:

| year | income | SGA income level[1] |
|------|--------|---------------------|
| 1988 | $2252.80 | $3600 |
| 1989 | $4571.55 | $3600 |
| 1990 | $6526.83 | $6000 |
| 1991 | $6465.29 | $6000 |
| 1992 | $2124.25 | $6000 |
| 1993 | $2812.23 | $6000 |

(R. at 162).  Thus, in 1989, 1990, and in 1991 plaintiff was
performing work as a training instructor at the substantial
gainful activity level.  The Dictionary of Occupational Titles
(DOT) states that the specific vocation preparation (SVP) for
this job is over 2 years, up to and including 4 years.  1991 WL
647345.  Plaintiff testified that he began training for this job

---

[1]Substantial gainful activity (SGA) levels for non-blind
individuals can be found at http://www.ssa.gov/oact.cola.sga.html
(Nov. 28, 2011).

in 1983, and moved into that position in 1988.  Thus, he had 5 years training for the job, and 6 years performing that job, 3 of those 6 years at a SGA level.[2]  The court finds that the record provides adequate evidence for the ALJ to conclude that the plaintiff performed this job long enough to learn to do it, and performed it at SGA levels for 3 years.  Therefore, it qualifies as past relevant work.

At phase one of step four, the ALJ must determine plaintiff's RFC.  The ALJ found that plaintiff has the RFC to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b) (R. at 14).  Because this case was decided at step four of the sequential analysis, the burden is on the claimant to show that his impairment(s) renders him unable to perform his past relevant work.  Henrie, 13 F.3d at 360; Castine v. Astrue, 334 Fed. Appx. 175, 179 (10th Cir. June 26, 2009).

The undisputed evidence from the VE was that plaintiff's past work as a training instructor was light work according to the Dictionary of Occupational Titles (DOT) and as performed by the plaintiff (R. at 40-41).  It was plaintiff's burden to establish that his impairments prevented him from doing his past light work, i.e., that he could perform less than a full range of light work.  Castine, 334 Fed. Appx. at 179.

_____

[2]The court would also note that, while training for the job from 1983-1987, plaintiff performed work at SGA levels in 1983 and in 1985-1987 (R. at 162).

There is no medical evidence in the record indicating that
plaintiff could not perform a full range of light work as defined
in 20 C.F.R. § 404.1567(b).  The ALJ found that plaintiff's
testimony and statements were not fully credible to the extent
that they indicate that he cannot perform light work (R. at 16).
The only medical opinion evidence regarding plaintiff's RFC was
from Dr. Felkins, and she opined that plaintiff could perform a
full range of light work (R. at 23).  The ALJ could reasonably
rely on that testimony to discount plaintiff's allegations of
greater limitations.

The remaining phases of step four require the ALJ to
determine the physical and mental demands of the prior job, and
then to determine the ability of the claimant to return to the
prior job given his or her RFC.  The ALJ found that plaintiff was
capable of performing past relevant work as a training instructor
because this work did not require the performance of activities
precluded by plaintiff's RFC.  In other words, at phase two, the
ALJ found that, based on the testimony of the VE and the DOT,
plaintiff's past work was considered light exertional work as
actually and generally performed.  At phase three, the ALJ
concluded that plaintiff could perform his past work given his
RFC, which limited him to light work (R. at 16).  On these facts,
the court finds that substantial evidence supports the ALJ's step
four findings.  See Qualls v. Astrue, 2011 WL 2600546 at *6-7

(10th Cir. July 1, 2011)(no error in step four analysis when
claimant found capable of performing a full range of light work,
with no other limitations, and ALJ found that plaintiff could
return to prior work which was light work); Griffin v. Astrue,
Case No. 10-1316-SAC (D. Kan. Aug. 8, 2011)(same); Parise v.
Astrue, 2009 WL 3764119 at *4-5 (D. Kan. Nov. 10, 2009, aff'd,
2010 WL 4846097 at *2-3 (10th Cir. Nov. 30, 2010)(same).

## V.  Did the ALJ err in his credibility analysis?

Credibility determinations are peculiarly the province of
the finder of fact, and a court will not upset such
determinations when supported by substantial evidence.  However,
findings as to credibility should be closely and affirmatively
linked to substantial evidence and not just a conclusion in the
guise of findings.  Kepler v. Chater, 68 F.3d 387, 391 (10th Cir.
1995).  Furthermore, the ALJ cannot ignore evidence favorable to
the plaintiff.  Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan.
1995).

When analyzing evidence of pain, the court does not require
a formalistic factor-by-factor recitation of the evidence.  So
long as the ALJ sets forth the specific evidence he relies on in
evaluating the claimant's credibility, the ALJ will be deemed to
have satisfied the requirements set forth in Kepler.  White v.
Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel,
206 F.3d 1368, 1372 (10th Cir. 2000).  Furthermore, the ALJ need

not discuss every relevant factor in evaluating pain testimony.
Bates v. Barnhart, 222 F. Supp.2d 1252, 1260 (D. Kan. 2002).  An
ALJ must therefore explain and support with substantial evidence
which part(s) of claimant's testimony he did not believe and why.
McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002).  It
is error for the ALJ to use standard boilerplate language which
fails to set forth the specific evidence the ALJ considered in
determining that a claimant's complaints were not credible.
Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004).  On the
other hand, an ALJ's credibility determination which does not
rest on mere boilerplate language, but which is linked to
specific findings of fact fairly derived from the record, will be
affirmed by the court.  White, 287 F.3d at 909-910.

    The court will not reweigh the evidence or substitute its
judgment for that of the Commissioner.  Hackett v. Barnhart, 395
F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d
903, 905, 908, 909 (10th Cir. 2002).  Although the court will not
reweigh the evidence, the conclusions reached by the ALJ must be
reasonable and consistent with the evidence.  See Glenn v.
Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm
if, considering the evidence as a whole, there is sufficient
evidence which a reasonable mind might accept as adequate to
support a conclusion).  The court can only review the sufficiency
of the evidence.  Although the evidence may support a contrary

                            14

finding, the court cannot displace the agency's choice between
two fairly conflicting views, even though the court may have
justifiably made a different choice had the matter been before it
de novo.  <u>Oldham v. Astrue</u>, 509 F.3d 1254, 1257-1258 (10th Cir.
2007).

     In his decision, the ALJ mentioned some of plaintiff's daily
activities, his lack of medical treatment, and the significant
weight he gave to the opinions of the medical expert, Dr. Felkins
(R. at 16-17).  The court will not reweigh the evidence regarding
the relative weight the ALJ gave to plaintiff's daily activities
or to the opinions of Dr. Felkins.  Dr. Felkins discussed
plaintiff's daily activities before testifying that plaintiff
could perform a full range of light work (R. at 23).  That
evidence certainly provides a substantial basis in the evidence
to support the ALJ's RFC findings.

     However, the ALJ also relied on the lack of medical
treatment during the relevant period; the ALJ further stated that
the plaintiff most likely sought no medical treatment during the
relevant period because he required no medical treatment (R. at
16).  However, the ALJ failed to mention that plaintiff testified
at the hearing as follows:

          Q (by plaintiff's attorney): Okay. The
          [medical] records look like they end in about
          1996. Do you know why that is?

          A (by plaintiff): No money. I, I didn't have
          insurance for the, the heart surgery. I

15

      thought I had insurance for the, the 1996
      episode and the company decided to disallow
      that and so Helen, my, my wife, ended up
      having to pay for, the, the hospitalization
      and the procedures that were taken care of.
      And we just didn't have the money and, in
      fact, they wanted me to go back to the
      doctors and, and we just didn't have the
      money.

(R. at 35).

   The 10th Circuit, relying on the case of Thompson v.
Sullivan, 987 F.2d 1482, 1489-90 (10th Cir. 1993), has repeatedly
held that the inability to pay may justify a claimant's failure
to pursue or seek treatment. Threet v. Barnhart, 353 F.3d 1185,
1190 n.7 (10th Cir. 2003); Norris v. Apfel, 215 F.3d 1337
(table), 2000 WL 504882 at *8 (10th Cir. Apr. 28, 2000); Smith v.
Apfel, 149 F.3d 1191 (table), 1998 WL 321176 at *4 (10th Cir.
June 8, 1998); Snead v. Callahan, 129 F.3d 131 (table), 1997 WL
687660 at *4 (10th Cir. Oct. 31, 1997); see also Eason v. Chater,
951 F. Supp. 1556, 1562 (D. N.M. 1996)(claimant should not be
penalized for failing to seek treatment that they cannot afford);
Hockenhull v. Bowen, 723 F. Supp. 555, 557 (D. Colo. 1989)
(evidence of nontreatment is of little weight when claimant's
failure to seek medical treatment can be attributed to their
inability to pay for such treatment). The ALJ clearly should
have considered plaintiff's explanation indicating that he lacked
insurance for the period of time that he did not receive medical
treatment.

Although the court has some concerns with the ALJ's failure
to consider the evidence that plaintiff lacked insurance for the
period of time that he did not receive medical treatment, after
examining the record as a whole, including the fact that the
ALJ's RFC findings are clearly consistent with the medical
opinion evidence, the court finds that the balance of the ALJ's
credibility analysis is nonetheless closely and affirmatively
linked to substantial evidence.  Williams v. Astrue, Case No. 09-
1341-SAC (D. Kan. Oct. 26, 2010)(Although the court had some
concerns with the ALJ's failure to consider the evidence that
plaintiff lacked insurance for the period of time that he did not
receive medical treatment, after examining the record as a whole,
including the fact that the ALJ's RFC findings are generally
consistent with the medical opinion evidence, the court finds
that the balance of the ALJ's credibility analysis is nonetheless
closely and affirmatively linked to substantial evidence); see
Branum v. Barnhart, 385 F.3d 1268, 1274 (10th Cir. 2004)("While
we have some concerns regarding the ALJ's reliance on plaintiff's
alleged failure to follow a weight loss program and her
performance of certain minimal household chores, we conclude that
the balance of the ALJ's credibility analysis is supported by
substantial evidence in the record."); Matlock v. Astrue, Case
No. 09-1207-MLB (D. Kan. May 7, 2010; Doc. 16 at 24-26)(While the
court had a concern with the ALJ's conclusion that the claimant's

ability to perform daily activities "to any degree suggests that

he retains the ability to work full-time," the court concluded

that the balance of the credibility analysis was closely and

affirmatively linked to substantial evidence, including the lack

of any medical evidence that plaintiff had limitations not

included in the ALJ's RFC findings); <u>McGlothlin v. Astrue</u>, Case

No. 08-1117-WEB (D. Kan. Aug. 4, 2009, Doc. 17 at 13 (same);

<u>Landwehr v. Astrue</u>, Case No. 08-1154-WEB (D. Kan. May 14, 2009,

Doc. 15 at 14-17) (Despite one error in the ALJ's credibility

analysis, the court held that the ALJ's credibility analysis was

nonetheless closely and affirmatively linked to substantial

evidence); <u>Kochase v. Astrue</u>, Case No. 07-1190-MLB, 2008 WL

852123 at *9  (D. Kan. March 28, 2008, Doc. 14 at 20-23) (same).

IT IS THEREFORE ORDERED that the judgment of the

Commissioner is affirmed pursuant to the fourth sentence of 42

U.S.C. § 405(g).

Dated this 6th day of December, 2011, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge